Parker, J.
I shall first consider the last question raised in this case, because it goes to the foundation of the action, and is one of some interest.
The plaintiff in the court below alleges that he leased to the defendant a certain lot or parcel of land with all the appurtenances thereto belonging, consisting of a grist mill, a saw mill and a carding machine, with their appurtenances, for the term of four years; that the defendant should have the privilege of building or making any improvements' necessary to keep the said machinery in operation; that in consideration thereof he had agreed to pay a certain rent, and at the expiration of the term, “ to return the said property with all its appurtenances.” The grist mill, saw mill and carding machine were consumed (accidentally or by some unknown incendiary) by fire; and the question is whether, under the terms of this agreement, the defendant was bound to rebuild the premises, and return them as he received them. There is no covenant to repair, or to deliver the demised premises in good order, or in the same order as he received them; but simply a covenant or agreement to return the property with its appurtenances. It is therefore distinguishable from Ross v. Overton, 3 Call 309. S. C. 2 Hen. & Munf. 408. Bullock v. Dommitt, 6 *537 T. R. 650. Brecknock Navigation Company v. Pritchard, Id. 750. Digby v. Atkinson, 4 Camp. 275. Phillips v. Stevens, 16 Mass. Rep. 238. Earl of Chesterfield v. Duke of Bolton, Com. Rep. 627. and from every other case that has been or can. be cited. In all of them, there were express covenants to keep in repair during the term, or-to deliver the property at the expiration thereof in good order or good tenantable repair, and not merely to deliver it with its appurtenances : and even where there were such express covenants to repair, it has seejped to some a strained and doubtful construction to expend them to the case of rebuilding. Iloss v. Overton was considered at the time a doubtful case, although Ross had expressly covenanted to deliver the mill and other improvements “ at the expiration of the said term of seven years, in proper tenantable repair.” And in Pollard v. Shaaffer, 1 Dallas 210. it was held by M’Kean, C. J. delivering a learned and able opinion of the supreme court of Pennsylvania (which I do not mean, however, to be understood as approving or disapproving) that a covenant to repair, and to deliver the premises in good order and repair, did not bind the tenant to repair the premises, which had been wasted and destroyed by the british troops.
'.Hiere arc strong considerations that would render me averse to extending the doctrine of the tenant’s liability in any degree beyond the decided cases. Such a risque is scarcely ever contemplated by either party, and the tenant receives no premium for the insurance. Were he asked, at the time of making a contract and giving a fair rent for the property, “ do you mean, if it is destroyed by fire or tempest, to rebuild or repair it ?” lie would be startled at the bare question : and the landlord himself, to the same enquiry, would unquestionably answer that he expected nothing so unreasonable. To bind him to something so unequal, and so contrary to the obligations imposed upon him by the common law, I *538 think his covenant ought to be special and express, and so clear as to leave no doubt that he intended to take this duty or charge upon himself. Nothing should be left to vague inferences or doubtful construction.
Taking these principles as our guide (which might be sustained by many authorities, if any thing so reasonable required to be thus sustained) let us look at this agreement, as the plaintiff himself states it.
The tenant was not bound at any time to repair, although he had the privilege, at his own costs and charges, of building or making any improvements to keep the machinery in operation ; and at the end of the term, he was to return the property with all its appurtenances. Is this any thing more than the usual covenant to be found in leases, to provide against the tenant’s holding over ? If the agreement was simply to return the property, there could be no doubt about its meaning; but some difficult}* seems to be produced by the expression “ with all its appurtenances.” These I regard as mere words of form, generally used in all conveyances of land and in covenants relating to land, but importing no more than what the law would imply, to wit, that the lot, and every thing belonging to it, should, at the end of the term, be returned. It is plain to my mind that the parties did not, by the'use of these words, intend to create a duty or charge of this onerous nature. It would be a strained construction to give them that meaning, when'they admit another obvious interpretation, consonant to common usage. The lot and all its appurtenances, on the day limited for the surrender, are to be returned; but as to losses by fire or other accident, the burthen of them must be borne by him who has in clear and express terms contracted to bear them, or by him on whom the law imposes the obligation. In Harris v. Nicholas, 5 Munf. 483. the covenant was to return the slave well clothed on the 25th of December: and if the mere-words had been re *539 garded, without looking to the intention of the parties, the defendant was bound to return him at all events, or pay his value. But the court said, that if the covenant stated in the declaration could be considered a covenant to return the negro in question, it ought not to be considered as a covenant to insure such return, in the event which had happened; especially under the usage and understanding of this country in relation to the subject. So here, if the agreement is one to return the lot and all its appurtenances at any time existing, it ought not to be considered, under the usage and understanding of the country, as a contract of insurance, for which no premium or consideration has been paid. What thfe parties looked to was the return, in opposition to holding over, — -not to the hazards of fire or oilier casualty. I arn therefore of opinion that the demurrers to the pleas ought not to have been sustained on this ground.
The other questions, which relate principally to the forms of pleading or to rules of practice, may be dispatched in fewer words.
The first objection is that the court ought not to have received the pleas at the time they were offered; first, because it was after the issue had been made up on the plea of non assumpsit; and secondly, because the matters alleged in them might have been given in evidence under the general issue. No exception to the court’s opinion is taken, so as to enable us to judge whether it exercised the sound discretion which it undoubtedly possesses, to admit or reject a special plea at any time before trial.
This court is bound to presume that the circumstances appearing to the court below, justified its admission of the pleas, unless the contrary is shewn. As to the other objection, I know of no rule which inhibits the party from pleading specially what he might give in evidence under the general Issue, unless the matter pleaded *540 amounts to the general issue, that is to' say, denies the allegations which the plaintiff is bound to prove. But where the cause of action is avoided by matter ex post facto, it may always be specially pleaded, whether it could be given in evidence under the general issue or not. Thus in an action of debt, the defendant may plead infancy and other matters specially, as well as nil debet; and in assumpsit, may plead infancy, lunacy or coverture when the contract was made, or illegality of consideration, as usury or gaming, or that the contract was not in writing, and so void by the statute of frauds ; although all these defences might be made under the general issue. 1 Chitty’s Pleading 557, 558, 559.
It is next objected that the pleas embrace several distinct and substantive facts; but as they make but one defence, and answer the whole declaration, it is enough: and besides, the irregularity could only be taken advantage of by special demurrer. They profess to set up a defence to all the written contracts stated in the several counts, , averring the several written contracts to be the same; whereas, it is said, the contract set out in the second count is not declared on as a contract in writing. By intendment of law, the contract, being for a. lease for four years, was a written one, and the defendant might treat it as such; and it was for the benefit of the lessor that he should so treat it. But in any event, this form of pleading contained no substantial defect, either in alleging the contracts to be the same, or that they were in writing; and it would only be objectionable on special demurrer. 1 Chitty’s Pleading 587, 3 Id. 1104. in notis. The pleas answer all the matter stated in the second count, and all and something more than the matters contained in the other counts. They are to be taken distributively, as pleas to each count; and in respect to the first, third and fourth counts, they contain matter which is mere surplusage.
*541 Again, it is said the pleas do not aver the payment of the rent and interest, but simply of the rent itself. The declaration avers the nonpayment of the 22 dollars a year for four years, and the defendant says he paid it. If the declaration claims interest by this general aver-meat, the defendant says he has paid interest, for he uses the same general terms; and this is sufficient, without considering the effect of the act of assembly which declares that interest shall hereafter be allowed on rent in arrear.
As to the lessor’s payment of the 800 dollars he was allowed to retain without interest until the end of the term, as a part of the consideration of the lease, it being a voluntary payment, I do not see how the defendant was bound, either in law or morals, to constitute himself a borrower, and pay interest for the loan. If be ha.d subsequently expressly promised to pay this interest, as Willing did the released debt, in the case of Willing v. Peters, 12 Serg. & Rawle 177. the previous contract to suflbr the principal sum to remain in the lessor’s hands without Interest, as a part of the rent, might have been a sufficient consideration, and have made the promise binding: but on that point it is not necessary to express an opinion. Besides, the breach alleged in the declaration is for demanding and receiving the 800 dollars, which the plaintiff says was in eifbet charging him with interest: to which the allegation of a voluntary payment seems to be a sufficient answer.
The remaining objection is that the court, upon overruling the demurrers, ought not to have given a peremptory judgment. The plaintiff' did not ask for permission to withdraw his demurrers. He chose to abide by them; and the pleas offering a substantial defence, the court had no other alternative than to give judgment for the defendant. Stephen on Pleading 176. 177.
For these reasons, I am for affirming the judgment.
The other judges concurring, judgment affirmed.